[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 215.]

THE STATE EX REL. HIRSCHVOGEL, INC., APPELLANT, *v.* MILLER; INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Hirschvogel, Inc. v. Miller*, 1999-Ohio-96.]

*Workers' compensation—Grinding wheel shatters during use—Claimant's application for additional compensation for violation of several specific safety requirements granted, when—Ohio Adm.Code 4121:1-5-12(D)(3)(a)(i) and (4)(a).*

(No. 97-1630—Submitted July 28, 1999—Decided August 25, 1999.)

APPEAL from the Court of Appeals for Franklin County, No. 96APD05-580.

———————————

{¶ 1} Claimant, Richard E. Miller, worked for appellant, Hirschvogel, Inc., as a tool and die polisher. To perform this task, claimant's work station was equipped with several hand-held grinders, none with a speed below 17,000 R.P.M.s.

{¶ 2} Grinding wheels were also supplied at the work station. Sometimes the wheel was already attached to an armature, and claimant merely had to attach the armature to the grinder.

{¶ 3} On June 25, 1992, claimant was told to polish "Butler punches." Claimant was injured when the grinding wheel shattered, breaking his safety glasses and driving lens fragments into his left eye.

{¶ 4} After his workers' compensation claim was allowed, claimant applied for additional compensation, alleging that his employer had violated several specific safety requirements ("VSSRs"). An investigation by appellee Industrial Commission of Ohio revealed that the injurious grinding wheel—a Cratex 203-A polishing disc—had a maximum rated speed of 10,500 R.P.M.s.

{¶ 5} At the commission hearing, claimant testified that supervisor William

Akers had instructed him earlier to use the Cratex disc on the Butler punches. Claimant was unaware of the Cratex's maximum rated speed. Claimant stated that on the date of injury, the wheel and armature were already assembled, attached to each other with a screw and a bolt. Claimant indicated that there were no flanges on the wheel. Claimant stated that he had never seen flanges used on that wheel previously and had never been told by Hirschvogel to use them on that wheel.

{¶ 6} A staff hearing officer granted claimant's application, writing:

"It is the specific finding that the Bureau of Workers' Compensation Safety Violations Investigation Unit report, photographs, invoices, diagrams, charts, and the statements from witnesses show the claimant was injured on June 25, 1992 while working as a tool & die polisher. The evidence indicates the claimant was operating a 'hand held deprag grinder' with R.P.M.'s of 19,000. There was other evidence indicating the grinder in question had R.P.M.'s of 28,750. The wheel in question was labeled with a maximum safe speed of 10,500 R.P.M.'s.

" * * *

" [Ohio Adm.Code] 4121:1-5-12(D)(3)(a)(i) states the following:

" '(3) Flanges

" '(a) General Requirements.

" '(i) All abrasive wheels shall be mounted between flanges which shall not be less than on[e]-third the diameter of the wheel.'

" * * * [T]here was a safety violation of this section in the Code. This section requires 'all' abrasive wheels be mounted between flanges not less than one-third the diameter of the wheel. The statements from the claimant and Pat Martindale indicate no flange was used on the abrasive wheel in question. The wheel label and information in the investigative report show the wheel used at the time of the accident was 'rubberized abrasive' wheel with uses for 'light deburring, smoothing, and polishing.' The wheel label contains language very similar to the requirements of the Safety Code. It states 'wheel flanges must be one-third the

diameter of the wheel.' Therefore, the manufacturer contemplated the use of the 'abrasive wheel' in question only with the additional use of 'flanges' for safety purposes. There was some evidence introduced that the employer provided flanges for use with this type of wheel and hand-held grinder. However, they permitted their employees to use the machinery and wheels without accompanying flanges. The claimant testified he was never instructed on the use of flanges and that flanges had never been used on this type of abrasive wheel * * * . It is the finding that the lack of using these flanges was a proximate cause of this injury in question and a Violation of Specific Ohio Administrative Safety Code Standard.

"The next section cited was 4121:1-5-12(D)(4)(a). This safety code provisions states the following:

" '(4) Mounting

" '(a) Inspection.

" 'Immediately before mounting, all wheels shall be closely inspected and sounded by the employer or a designated employee (ring test) to make sure they have not been damaged in transit, storage, or otherwise. The spindle speed of the machine shall be checked before mounting of the wheel to be certain that it does not exceed the maximum operating speed marked on the wheel. Wheels shall be tapped gently with a light non-metallic implement * * * . I[f] they sound cracked (dead)[,] they shall not be used. This is known as the 'ring test.' * * *

" * * * [T]here was also a safety violation of this section. The 'ring test' would not be a requirement in that the composition of the abrasive wheel in question has a 'rubberized' base. However, the section also requires close inspection by the 'employer' or 'designated employee' which was not conducted by the employer of record. This section additionally requires 'the spindle speed of the machine shall be checked before mounting of the wheel to be certain it does not exceed the maximum operating speed marked on the wheel.['] The evidence including [the] aforementioned statements and descriptive materials * * * gave the

R.P.M. of the hand grinder was [*sic*] either 19,000 R.P.M. or 28,750 R.P.M.[,] whereas the maximum allowable R.P.M. of the rubberized grinding wheel was only 10,500 R.P.M. This discrepancy in the R.P.M. between grinder and guiding [*sic*] wheel was a violation of the safety code and the direct responsibility of the employer of record. This safety violation was the proximate cause of the injuries of record."

{¶ 7} Rehearing was denied.

{¶ 8} Hirschvogel filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in granting claimant's VSSR application. The court of appeals disagreed and denied the writ.

{¶ 9} This cause is now before this court upon an appeal as of right.

_____

*Vorys, Sater, Seymour & Pease* and *Theodore P. Mattis*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Cheryl J. Nester*, Assistant Attorney General, for appellees Industrial Commission of Ohio and Bureau of Workers' Compensation.

_____

***Per Curiam.***

{¶ 10} The commission's order contains an accurate recitation of the two specific safety requirements currently at issue — Ohio Adm.Code 4121:1-5-12(D)(3)(a)(i) and (4)(a). Hirschvogel does not dispute noncompliance with these specific safety requirements. The Cratex 203-A grinding wheel was not attached to the wheel armature with flanges, and the wheel's maximum rated speed was greatly exceeded by the minimum speed of the grinder.

{¶ 11} Hirschvogel instead attempts to excuse its noncompliance by asserting that the provisions do not apply. Alternatively, it alleges that claimant acted negligently, thereby shielding Hirschvogel from liability. Neither contention is persuasive.

{¶ 12} The employer's initial argument is directed primarily to Ohio Adm.Code 4121:1-5-12(D)(4)(a). Hirschvogel argues that because the rubberized nature of the grinding wheel made it unconducive to "ring testing," it was not encompassed by section (D)(4)(a). We disagree.

{¶ 13} Claimant's accident demonstrates the dangers of using a grinding wheel incapable of handling the R.P.M.s produced by the grinder. Yet Hirschvogel essentially argues that wheel/grinder incompatibility is somehow ameliorated by a wheel's inability to emit a ringing sound when tapped. We cannot ratify this premise. Ohio Adm.Code 4121:1-5-12 applies to "abrasive grinding and * * * polishing * * * equipment." Hirschvogel itself describes the equipment at issue as a "rubberized abrasive disc." We find, therefore, that the commission did not abuse its discretion in applying Ohio Adm.Code 4121:1-5-12(D)(4)(a) and in finding a violation of this section.

{¶ 14} Hirschvogel also alleges that claimant was negligent in not using approved safety glasses and that this negligence immunizes it from penalty. Claimant's alleged negligence, however, even if it existed, is a defense only where the employer has *first* complied with the relevant safety requirement. See *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.* (1988), 37 Ohio St.3d 162, 524 N.E.2d 482. Here, Hirschvogel did not satisfy either requirement at issue, negating our need to explore its assertion further.

{¶ 15} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————